NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OLIVIA SELTO, as guardian of minor child and personal representative of minor K.P. estate of Kevin Peterson, Jr.; TAMMI BELL, personal representative of estate of Kevin Peterson, Jr.; KEVIN PETERSON Sr., <br><br> Plaintiffs - Appellees, <br><br> v. <br><br> COUNTY OF CLARK, a political subdivision of the State of Washington; ROBERT ANDERSON, Sheriff's Detective; JONATHAN FELLER, Sheriff's Deputy, <br><br> Defendants - Appellants, <br><br> and <br><br> CHUCK ATKINS, DOES, John and Jane Does 1 through 10, in their official and personal capacities, <br><br> Defendants. | No. 23-2531 <br><br> D.C. No. 3:22-cv-05384-BJR <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington

---

\*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Barbara Jacobs Rothstein, District Judge, Presiding

Submitted July 12, 2024[**]
Seattle, Washington

Before: McKEOWN, CLIFTON, and DE ALBA, Circuit Judges.

Defendants-Appellants Robert Anderson and Jonathan Feller appeal the district court's denial of summary judgment in Plaintiffs' excessive force claims under 42 U.S.C. § 1983. They challenge the district court's denial of qualified immunity. Plaintiffs filed suit alleging unreasonable use of deadly force when County of Clark Sheriff's Department deputies fatally shot Kevin Peterson Jr. while he was fleeing during a sting operation designed to arrest him for conspiracy to deliver narcotics. We have jurisdiction over this interlocutory appeal from denial of qualified immunity under the collateral order doctrine, *Estate of Anderson v. Marsh*, 985 F.3d 726, 730 (9th Cir. 2021), and we affirm.

Our jurisdiction is "circumscribed" and we can only review "whether the defendant[s] would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff[s'] favor." *Id.* at 730-31 (cleaned up) (quoting *George v. Morris*, 736 F.3d 829, 834, 836 (9th Cir. 2013)). We review de novo whether defendants "(1)

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

violated a constitutional right that (2) was clearly established at the time of the violation." *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022) (citations omitted).

1. "Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). In assessing the objective reasonableness of a use of force, we consider the totality of the circumstances, including: "(1) the severity of the intrusion on the individual's Fourth Amendment right by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (cleaned up) (quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc)). Courts must consider the reasonableness of the force used "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Here, viewing the facts in the light most favorable to the Plaintiffs, the government's interest in the use of deadly force was limited because Peterson was not suspected of committing a violent crime and a jury could reasonably conclude that he posed no immediate threat to the officers or others. *See Espinosa v. City &*

*Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010). Although Peterson was armed and actively trying to evade police officers, the evidence, construed in his favor, suggests that he did not point the gun at anyone, say a word to the officers, make any harrowing gestures, or make any furtive or threatening movements towards the officers or the public. *See Rice,* 989 F.3d at 1121 (holding that the "most important" factor in deadly force cases is whether the suspect posed an immediate threat); *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (en banc) (noting that deadly force is generally not permissible "unless it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others" (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985))). While Defendants rely on officer testimony to the contrary, "in the deadly force context, we cannot 'simply accept what may be a self-serving account by the police officer,'" because the victim—usually the best-positioned witness to rebut an officer's testimony—is dead. *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

Thus, viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could find that the officers' use of deadly force was constitutionally excessive.

2. Even when government officials violate a plaintiff's constitutional right, they are entitled to qualified immunity unless the right was "clearly established"

when the violation occurred. "Conduct violates a clearly established right if the unlawfulness of the action in question is apparent in light of some pre-existing law." *Ballou*, 29 F.4th at 421 (cleaned up). There need not be a case "'directly on point' . . . but the constitutional question must be 'beyond debate.'" *Ohlson v. Brady*, 9 F.4th 1156, 1166-67 (9th Cir. 2021) (quoting *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018)).

Supreme Court and Ninth Circuit precedent clearly establishes that "[w]here the suspect poses no immediate threat to the officers and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471 U.S. at 11; *see also Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (noting that "a police officer may not use deadly force against a non-threatening individual, even if the individual is armed, and even if the situation is volatile" (citing *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1227–28 (9th Cir. 2013) and *George*, 736 F.3d at 832-33)); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (holding that deadly force was unreasonable where the suspect possessed a rifle but was not pointing it at the officers and was not facing the officers when they shot); *Harris v. Roderick*, 126 F.3d 1189, 1203-04 (9th Cir. 1997) (holding that officers "may not kill suspects who do not pose an immediate threat to their safety or the safety of others simply because they are armed," including in some circumstances in which

the suspect has "committed a violent crime in the immediate past").  Thus, *Harris*, *Curnow*, and *Garner* established that Defendants were on notice that the force they used against Peterson was constitutionally excessive.

Construing all facts and inferences in Peterson's favor, a jury could reasonably conclude that Defendants violated Peterson's clearly established Fourth Amendment right.  The district court did not err in denying qualified immunity to Defendants.

**AFFIRMED.**